For the record, I'm Charles Gottlieb, and I represent the Plaintiff Appellant, Ms. Arlys Williams, and I've reserved five minutes. The briefs address several issues, and a few-second summary of them is whether there was discretion that was granted, in other words, whether the review of the record is going to be de novo or arbitrary and capricious, and related to that is the Michigan regulation that bars discretionary clauses in these benefit policies. The other general issue is about the analysis of the evidence, which the respective briefs spend a good deal of time on, but I think in essence what we have here is the treating physician saying my client is disabled, she'll never work again, this is a permanent condition, fibromyalgia, and so forth, versus the IMEs that were hired by Hartford that says she can do sedentary work. And also I think it's relevant that benefits were paid for 13 years before Hartford came in, gave a letter notice allegedly of its now discretionary power, and used that as a basis with her IMEs to interrupt her benefits that she was depending on. Subject to the court giving me some guidance, one of the items that I want to address in the record with respect to the analysis of the evidence is the vocational analysis. The planned 1998 SPD provides that the other suitable employment has to be 128% more than what my client was earning. And the record shows that 128% would be $3,724.80 per month. That's 128% of the disability payment, not the salary, isn't it? The new job has to pay 128%. Of the disability payment. I think so. Okay. Doesn't that depend on whose reports you look at, though? There's these agencies and organizations out there that compile statistics which are used a lot of times by insurance companies in cases like this to make these determinations on the thing. I submitted as part of the administrative record at another agency that gave the salary figures. I apologize, I can't give the citation for it. No need to. But it was still less. Didn't the Department of Labor, I mean, didn't they use a Department of Labor figure? Exactly. But, I mean, that's reasonable, isn't it? Yes, and according to those records that are in the vocational analysis is that the pay for males was less than 128%, and more specifically the pay for females monthly, $3,055, was less than 128%. I thought the Department of Labor number supported their figure. You're saying that's mistaken? I'm saying that's mistaken. What the district judge cited and what the defendant cited was a wage for a supervisor or accounting clerk at $3,908. And that's at the administrative record of 132. My position was that the 138 figures were less than that amount, and I have not been able to see anything in the record, maybe I'm wrong but it will be pointed out, that supports that figure of $3,908. Rather, the Department of Labor figures is what I gave you according to the vocational analysis at 138. Let me interrupt just for a minute. Sure. Part of, and you're arguing very appropriate things which are very significant and important, but a little bit of that is going to relate back to what our standard of review is. Because if it's de novo and we think that one report is better than another, that's our choice at that point in time. If it isn't de novo, then we look at it entirely differently. And my concern in this case and a lot of these cases is that going back as far as 1998 when we had an en bas case called Perez, we made clear that there's no magic to the word discretionary. You looked at what the plan did, but you don't have to have the word discretionary in the plan. And that's significant in that I think that there's been a conflation in some of the cases as to what is actually meant by the discretion. For example, when this plan said the company, meaning the plan administrator, shall have the discretionary authority to interpret the terms of the plan, that doesn't mean that the plan administrator has discretion to interpret it or not interpret it. They can't have a board meeting and say, I don't think we'll interpret the plan today. It stems from the fact that a plan sponsor, and a lot of this relates back to trust law, just like the set law in a trust, has the discretion to give the trustee or the plan administrator certain powers. And the example I would give you, if you said the trustee or the plan administrator has absolute power to do X, or if you said the plan administrator has discretionary authority to do X, you certainly wouldn't construct an argument that by saying absolute authority I've given him less authority than if I said discretionary authority. So when you read, going back to 1998, and some of this in the briefs and whatnot are quoted with ellipses and whatnot, but it says the company, meaning in this case Mutual Life Insurance Company, is the plan administrator of the plan for purposes of ERISA, except, as previously stated, the plan administrator shall control and manage the operation of the plan and make all decisions and determinations. In carrying out its plan responsibilities, the company shall have the discretionary authority to interpret the terms of the plan. Now, isn't the plan administrator shall control and manage the operation of the plan and make all decisions and determinations? Isn't that the person that sets this up relinquishing all of that? And they could have retained some of it, but doesn't that represent a total relinquishment? The specific grant of discretion was to interpret the plan. It's not an issue here about interpreting the plan. Are you back to making discretion a magic word again? No, I'm not. I recognize that it doesn't have to be a magic word, but it doesn't say in any terms implying suggesting discretion to decide claims. That's just not there at all. I mean, it's more broad, though, isn't it? I mean, what Judge Guy just read is even more broad. I respectfully disagree. When it says that the plan administrator can decide claims, whatever, I don't have the words exactly right. Well, of course, they always decide claims, but just because they have an opportunity to decide the claim doesn't invoke the arbitrary and capricious standard. If there is no statement whatsoever, we know that the administrator decides claims, but that by itself doesn't give discretion. There's no language about deciding claims in there. It says it makes all decisions and determinations. That's everything. I agree. They can make the decision, but now do they have discretion to decide the claims or not? I acknowledge the plan administrator decides claims. Isn't whether you get benefits or not the key decision in any benefit plan? It sure is. Well, wouldn't that come under all decisions? The plan administrator makes all decisions, but where is the implied agreement about discretion? Well, we've gone full circle on it. I think you understand where I'm coming from, and I understand what you're saying. And the sign, the clock says I'm to sum up, so thank you very much. Thank you, sir. You'll have your rebuttal, and we'll hear from Ms. Rupp. Thank you. May it please the Court, Kimberly Ruppel on behalf of the Appellees Target Corporation. Something's going on. Okay, go ahead. Thank you. Yes, Kimberly Ruppel on behalf of the Appellees Target, Hartford Life, and the Executive Plan. We submit that this is a case where the trial court ruled correctly with respect to the key issues being the standard of review, as well as the ultimate claim determination, the termination of Ms. Williams' disability benefits. As the judges aptly pointed out, the plan documents here expressly confer discretionary authority on the claim fiduciary, which triggers the arbitrary and capricious standard of review. Going back to the 1998- Which version of the plan governs the issue, the question whether this was a discretionary determination? Is it the 98 language? That's a very good question, Judge Kepledge, and the district court aptly reviewed all three pertinent documents here, the 1998 SPD summary plan description, the 2006 SPD that was issued by Target after taking over from Dayton Hudson Corporation, and the 2010 policy certificate. And as the district court correctly found, all three of those plan documents included and express discretionary authority. Let's say they differed. In your view, which one governs the issue before us? I would submit that the 2006 summary plan description controls. The 2010 policy certificate certainly controls with respect to Hartford's delegation of authority to Hartford as the claim fiduciary, because it was not until 2010, of course, that Hartford insured the benefits at issue. But I think Mr. Gottlieb argues that she was awarded benefits in the late 90s. The plan at that time said any amendment to the plan will not affect established benefits. Ergo, the later amendments cannot be invoked here to affect her entitlement to those benefits. Is that, I mean, what's your response to that? I would agree with, in terms of the citation to the plan language, the SPD language in the 1998 document, it did reserve the right to amend or terminate the plan so long as that did not affect the established claim for benefits. However, I think the district court correctly found that, number one, there was no change with respect to the standard of review and the level of discretionary authority. All of the three plan documents throughout the history here have that language, have the discretionary language. And, number two, there was no change to her benefits because her benefits were not vested. This is a case that would fall under the Sprague ruling where, because the plan did expressly reserve the right to amend or terminate benefits, the benefits are not established in the sense of they are guaranteed or continued or ongoing. Rather, the claimant has an obligation to continue to provide proof of loss in order to be entitled to receive benefits throughout the course of the claim. But who has the burden of making the determination of whether that medical evidence is sufficient? Who has the burden of determining that? That would be Hartford, Your Honor. Right. I'm struggling with the claim in your briefing that the burden of proof is on the plaintiff. Point me to how you reach that conclusion because when I look back at your records and at the 1998 SPD, what I'm seeing is that the SPD places the burden on the administrator to consider the factors. We're at 7-11 in your record. To determine disability, to decide whether you can perform another job, to determine whether it provides 128% of the benefit. And the only thing in all those records that the plaintiff has to do is provide you medical evidence. How does that place the burden of proof in a legal matter on the plaintiff? It just sounds to me like the plaintiff has to submit this, but the burden of making that decision and the burden of carrying that evidence is yours. I respectfully disagree, Judge Strand. Why? And I would refer you to that record evidence, number one in the 1998 SPD. You mentioned that record entry 14, page 7-11. The definition of disability is if you continue to meet the definition of disability, your benefits will continue. Exactly. That's where I am. And who decides if you continue to meet? The administrator does. So why isn't the burden yours to show your decision? In addition to the claimant being required to continue to prove disability, that is also fleshed out in the policy with respect to providing satisfactory proof of loss. The claimant is required to document the date, cause, and prognosis of a disability, and I'm referring to page 683 of record number 14. The claimant is required to provide evidence of regular care by a physician, as well as any other supporting medical information, including medical records, diagnostic exam, and treatment notes. And then after receiving benefits for a period of 24 months, which we all agree is this period of time currently, in order to continue to be entitled to receive benefits, the claimant must establish disability defined as an inability to engage in any occupation which will provide an income equal or greater to 128% of the monthly benefit. And again, that's at page 686 of record number 14. So the claimant is required to demonstrate these factors in order for Hartford to reach a determination that she has satisfied the definition of disability. But it's your determination. I'm looking at page ID 796. The reasons your benefits may end is you fail or refuse to provide required medical proof. No question. That's their job. You fail to submit to any required medical examination or evaluation, fail to provide income. All of the reasons for ending in your plan documents are not providing requested evidence or making yourself available to be examined. But all of the determinative factors are made by the administrator. That sounds to me at law like it is your burden to show that this person does not qualify because you're making the decision and you're taking away benefits that have been paid in this case for 13 years. I would respectfully disagree with that analysis, Judge Strange, and that is because I would submit that the burden is on Hartford to evaluate the evidence presented by the claimant in support of her claim. Isn't that what's before us? Isn't that the very question? All she has is what the doctors say. There's nothing else that she can do but give you this and say, I stand ready to take your test. Send me to your doctors. But you look at that and you make the evaluation. So why isn't it your burden when you come before this court to justify your decision? Because there's not an assumption that a claimant simply submits medical records. But that's what your documents say. In order to provide satisfactory proof of her disability. And that's an evaluation that is made by the claim fiduciary. But simply saying, I am disabled and here are some medical records where a treating doctor says, I don't have to work anymore, is not sufficient. The claimant must provide evidence that there's occupational disability, that there's the inability to even perform a sedentary occupation under this particular test. But that would be in her medical records if it exists. It could be. It could be in other evidence. But yes, it could be in her medical records. Yes. This sort of neat legal issue versus standard of review and whatnot is something we could chew on all day. But that's a threshold issue. And even if we say arbitrary and capricious, there's an argument to be made that in connection with both the 128 percent issue, the documents relied on, the female person. Can you address some of those things? Because that goes beyond the standard of review. Many times in these cases we simply say, regardless of which standard of review is applicable, we find accordingly. Sure. Very good. And as I think that both Judge Geigerself and Judge Cethledge pointed out, Hartford did use a Department of Labor occupational analysis in terms of determining the salary of the occupation. The supervisor of accounting clerks, that's at page 132 of Record 14. We submit that that's a reasonable way to determine what a salary amount is and compare that to the 128 percent of the monthly earnings requirement. As far as the actual occupation, Ms. Williams. Before you go, I'm struggling with these numbers. I want you to help me with them. I'm looking at AR 139, and I'm looking at, this is what you said you relied on. Okay. Okay, so I'm looking at AR 139, and it's saying, here are the statistics. Estimated mean hourly range is 24.04. Estimated median hourly range, which is what you said you relied on, is 2,255 an hour, right? I'm looking at your 3,908.67 on a monthly basis, and I wanted to compare it to those numbers. So I did the calculation, and the median, I'm not seeing how your numbers match, because what I'm finding is that the median hour that you say you're relying on translates to 3,608 per month, and that falls below your 3,908.67. How did you make that calculation to assume that the 2,255 works out to 3,908.67, because I can't make it work. The 3,908.67, Judge Strantz, comes from page 132. I have it. Okay. And it's based on, in your argument, it's based on estimated median hourly wage of 2,255 taken from the DOL data. It doesn't calculate out, Counselor. Your Honor, to be perfectly honest, I haven't done the calculations, and I apologize about the math, that that doesn't work, but the numbers are what Hartford was based on in terms of the wage on page 132 in that column under wage for the supervisor of accounting clerks. Why do you have, all right, let's put that aside. I'm looking at page 138, the 2009 census data that is in your report provided, and it shows a distinct discrepancy between female and male earning capacity. Why is that discrepancy not included in your calculation for a, what is she, a 61-year-old woman who's been out of the workforce for 15 years? That's a fair question, Judge Strange, and I can't answer that because that's not in the administrative record. I can't answer that question directly. In terms of the dollar figures. Well, it's in the administrative record that there's a distinction, a considerable distinction between males and females. The monthly median for a female is 3,055. The monthly median for a male is 3,627, which you and I probably know is true in the work world, don't we? I wouldn't dispute that, Judge Strange, no. So you've got a woman, and you've got to say that she's going to receive 128% of what she can earn. The statistics in your report show that there's a monthly difference of about $600, and it makes a difference. Explain to me how you can justify ignoring that difference in making your calculation. I would submit that that was not ignored, Judge Strange. I would say that this amount was reviewed against the 128% of the monthly earnings. It was a mathematical calculation. But both of those, I guess I'm looking at AR-138, both the male monthly median and the female monthly median are below 3,967. Both of them fail to satisfy your plan document requirement. In that instance, that is one example of numbers that are different, but it's reasonable also for Hartford to have relied on the wage that is listed with the occupation by the Department of Labor. And I submit that Hartford reasonably did rely on that number in terms of Let's just assume that we can calculate it and make it work. Why is it reasonable to ignore the data that distinguishes between the earning capacity of women and men? I think that that would get down a different road in terms of evaluating claims and what Hartford's burden is. You have a woman before you, and you have documentary evidence and practical knowledge that women don't earn as much money in these jobs as men do. And you're trying to decide whether you're going to pay disability benefits to a woman. I don't understand how it's reasonable to ignore that recognized and acknowledged wage distinction. I would submit that because that is not the definition of disability as the policy provides. The policy does not distinguish between gender, and that's not what the claims determination was rendered based upon her gender. That would be inappropriate with respect to the disability definition in the policy. It's just to be based on items that don't relate to the statistics that you have? It's more based on her work history, her skills, her training, her education, than her gender. Okay. Judge Guy has a question. I think you have a remainder of a question that he had asked as well. No, anyway, if you have, forget about it. But my question is that this 128% of the disability is an interesting provision. I don't think I've been involved in a case that had a similar provision. And one of the things that makes it problematic is exactly the discussion that you're having on the thing, because there's medians and there's averages and there's this, that, and the other thing. And my question that I'm actually coming to is that let's assume a case that we would all agree that the job that they said she could do paid $2 less a month than she was getting in disability. Would it be arbitrary and capricious to ignore that $2? In other words, is this sort of one of those absolute bars? If it is, it's something you've self-imposed upon yourself on the thing, because arbitrary and capricious can mean willy-nilly, but it can also mean just plain wrong. If you're just plain wrong on something, there are cases that say that that can be construed as, it's not like you had the mens rea to be bad. It's just that the facts don't support your conclusion. And I would argue that in this case the facts do support the conclusion, which makes it a rational and reasoned determination. But that's not the answer to my hypothetical. So your question, if I could rephrase, is if the job that was found to be something that the claimant could do paid $2 less than the monthly earnings? 128% of the monthly earnings. Okay. Then I think that a claims administrator or claims fiduciary lives and dies by the policy definition. And if the job that is found does not satisfy the earning requirement, it is no different than if the plaintiff or the claimant could not perform the occupational. That's a nice, candid answer to it. But it does make this money issue pretty important in this case. It's part of the definition, and I would submit that because the earnings requirement were met here, that that was satisfied. Okay. Thank you for your argument. We'll hear from Mr. Gottlieb. I couldn't find my pen when I said that. Yeah, I know. You were worried about it. The sense that I'm gathering from where the focus of the questions are is about this 128%. And I think the sense also is that regardless what the standard of review is, arbitrary capricious or de novo, if the evidence doesn't show that there's a job out there in the record of her making the sufficient earnings, then the case is decided and my client would get her benefits. There is a recent case of about two months ago that I found about three days ago that may give some guidance to the court. It's Gillespie v. Liberty Life. You cited that anywhere in your? No. What's the site for it then? The FedAPX site is so new that they don't have it. But the Westlaw site is 2014 WL221970. And it addresses, in part, some of the issues that were presented with here about the vocational analysis. And not that it's dispositive, but points out that it's a factor in being arbitrary and capricious if the vocational analyst ignored other evidence of record and only picked up the sedentary job finding from the first IME in the case. And that would be a factor in considering whether it was even arbitrary and capricious. That case sounds like it's about medical condition, the IME and whatnot. They're talking about findings, medical findings. The case you're just citing to us. Yeah, but it also talked about what was deficient with the vocational analysis that was used in that case. I understand that, but that was analysis based on activities the person could do and whatnot, which is also an issue in your case. Yes, and the hypothetical that was used by the vocational analysis was just two or three words. The IME says that she can do sedentary work. The rest of it follows. There was no effort to consider the other evidence of record, which should be done in a balanced review by a fiduciary. That's my additional comments. Thank you, sir. We thank you both for your arguments. Case to be submitted. Clerk may adjourn court.